## MARSHALL v. HINES, Director General of Railroads.

(Circuit Court of Appeals, Eighth Circuit. January 18, 1921.)

No. 5541.

1. **Railroads ⚌370—Lookout to warn persons on switch track not required.**

    A railroad company *held* not negligent in failing to station an employé on the switchboard of the tender of an engine backing on a switch track, to warn persons of its approach.

2. **Negligence ⚌99—Contributory negligence of person killed on switch track held slight.**

    Under Rev. St. Neb. 1913, § 7892, providing that contributory negligence shall not bar recovery for personal injury, when the contributory

negligence was slight and the negligence of defendant was gross in comparison, as construed by the Supreme Court of the state, a man who alighted from an automobile in the daytime 30 feet in front of a building, across from a raised platform and switch track, and in full view of an engine which he knew to be on the switch track, and which was then backing toward the building at a speed of 6 miles an hour and some 500 feet distant, crossed the track to the platform and walked along in front of it 20 feet toward the coming engine, and then started across the track, and was struck by the tender and killed, *held* chargeable with more than slight contributory negligence as compared with the negligence of the engineer, if, as charged, he failed to ring the bell, and which precluded recovery for his death.

**3. Courts ⊗═352—Verdict directed on clear proof.**

It is the established rule in the federal courts that if, at the close of the trial of the questions of negligence of the defendant and contributory negligence of the person injured, the evidence so clearly shows that the latter was chargeable with negligence which directly contributed to his injury that a finding to the contrary could not be sustained by the court, it is its duty to direct a verdict for defendant.

**4. Negligence ⊗═82—Test of contributory negligence stated.**

In a case of alleged contributory negligence, the question is not whether the negligence of plaintiff or that of defendant was the more proximate cause of the injury, but it is whether or not the negligence of the injured person directly contributed to cause it.

**5. Negligence ⊗═83—"Last clear chance" doctrine stated.**

The "last clear chance" doctrine is limited to cases in which the defendant actually discovers the person injured and his peril in time to avoid the injury, and does not include cases where by the exercise of ordinary care defendant might have made such discovery in time to avoid the injury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Last Clear Chance.]

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action at law by Elizabeth Marshall, administratrix, against Walker D. Hines, Director General of Railroads. Judgment for defendant, and plaintiff brings error. Affirmed.

J. S. McCarty, of Lincoln, Neb. (G. W. Berge, of Lincoln, Neb., and J. H. Agee, of Superior, Neb., on the brief), for plaintiff in error.

Jesse L. Root, of Omaha, Neb. (Byron Clark, of Omaha, Neb., M. V. Beghtol, of Lincoln, Neb., and J. W. Weingarten, of Omaha, Neb., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. Elizabeth Marshall, administratrix of George L. Marshall, brought an action against the Director General of Railroads for $25,000 damages for his alleged negligence in the operation of an engine and three cars on a switch track at Superior, Neb., which, she alleged, caused the injury and death of Mr. Marshall. The Director General denied the negligence averred and alleged that Mr. Marshall's injury and death were caused by his own negligence. The issues were tried by a jury. At the close of the evidence the court directed a verdict for the Director General, hereafter called the de-

fendant, and a verdict and judgment accordingly were entered. The administratrix, hereafter called the plaintiff, sued out this writ and her counsel made several specifications of error; but they are all included in the single charge that the trial court erroneously instructed the jury to return a verdict for the defendant. Complaint of this ruling presents the question whether or not the evidence was such that the court below could, in the exercise of its judicial discretion, have sustained a verdict or judgment for the plaintiff if it had been rendered, and has induced an exhaustive examination of the evidence, which has disclosed these facts:

Mr. Marshall was run over and mortally injured by an engine operated by the defendant on a switch track of the railroad company at Superior, Neb., about 1 o'clock in the afternoon on a bright sunshiny day in August, 1918. This switch track was a stub track serving a mill, so that it was necessary in operating it to back the engine in upon or out over it, and the engine was backing west, tender foremost, with three cars following it, when the accident happened. About 400 feet west of the mill, which was situated near 'the end of the stub track and on the south side of that track which extended west from the mill toward its junction with the main track, there stood a large brick building, about 195 feet long, with a cement platform about 4 feet high on the north side of it, which was owned by the Henningsen Produce Company. The switch track alongside this building lay on the land of the Produce Company, parallel with and about 46 inches north of the cement platform, but east of the northeast corner of this building this track curved to the south, so that further east it lay 4 feet south of the line on which it lay opposite the building. North of this track, and approximately parallel with it, was the public road 30 feet wide. The land between this road and the Produce Company's building was not inclosed, and customers of that company with their teams and others passed over it on their way to and from that building when engines or cars were not using this switch track but it was not a public highway.

Mr. Marshall was about 60 years of age, a resident of Superior, a man in full possession of all his faculties, long familiar with the situation of the track, the road, the cement platform, the switch track, and their uses, a carpenter by trade, who had previously worked in and about the Produce Company's building. Mr. Johnson, a witness called by the plaintiff, was the secretary-treasurer and manager of the Produce Company, which was engaged in dealing in butter and eggs, storing produce, making butter, and handling poultry. On the day of the accident he engaged Mr. Marshall to do some carpenter work at the Produce Company's building. A few minutes before 1 o'clock in the afternoon of that day he went to Mr. Marshall's residence and took him in his automobile to a point on the public road north of the Produce Company's building opposite the middle of and about 30 feet from it, where they alighted and walked south to the cement platform. They came to the place where they stepped out of the automobile upon the road from the east, and on their way they passed at a distance of about 5 feet the engine and the three cars, which were

then standing on the switch track at the mill 400 to 500 feet east of the east end of the Produce Company's building. Before they reached the cement platform the engine commenced to back west towards them upon the switch track and to draw the three cars after it, and when they reached the platform, Johnson, who had seen the engine and cars coming, told Mr. Marshall to look out for the engine. There were steps leading from the ground up to the surface of the platform at the extreme west end of it, and others of like character at a point about 45 feet east of the place where Mr. Marshall and Mr. Johnson reached the platform.

Johnson testified that he thought Marshall heard him at that time tell him to look out for the engine, and that he had heard what he said in an ordinary tone of voice in the conversation they were having before they arrived at the platform. When Mr. Johnson gave Mr. Marshall this first warning, the backing engine was about 350 feet east of Mr. Marshall. As soon as Johnson had given Mr. Marshall this warning, he jumped up onto the platform as he was accustomed to do; but Marshall, who was carrying some of his tools, failed to follow him, and when Johnson had landed on the platform and straightened himself up he saw Mr. Marshall about 15 or 20 feet further east toward the coming engine, with his feet on the ground and his hands on the platform. Thereupon Johnson shouted at the top of his voice to get out of the road of that engine, which was then about 100 or 175 feet east of him. Marshall looked up at Johnson, but did nothing more. Then Johnson immediately shouted his warning again. Marshall glanced over his shoulder, threw up his hands, and started north across the track; but he stumbled, and the tender caught him before he had crossed the track. While there were a few trunks of trees and a few branches between Johnson and Marshall and the engine at times between the time when they left the automobile and the time the tender caught Mr. Marshall, the engine and train were readily visible to each of them all this time, and as they went from the automobile to the platform, and as Marshall went east between the first and second warning, his face must have been toward them. The engine moved west at a speed of about 6 miles per hour. On account of the curve in the track east of the Produce Building, the engineer, who was leaning out of the window of the cab looking west, could not see the place where Marshall was until the engine had passed the northeast corner of the Produce Building, and when he did so he was about 65 feet from Mr. Marshall.

[1] There were no employés of the defendant on the switchboard of the backing tender to notify pedestrians of the approach of the engine, but the failure of the defendant to place or maintain employés in that position in his railroad yards or on his switch track under such circumstances as those existing in this case was not a breach of his duty to exercise reasonable or ordinary care in the operation of the switch track, and did not constitute actionable negligence. C., St. P., M. & O. Ry. v. Kroloff, 217 Fed. 525, 531, 133 C. C. A. 377, 383.

[2] Section 7892 of the Revised Statutes of Nebraska of 1913 provides that, in actions for damages for injuries to a person, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery, when the contributory negligence was slight and the negligence of the defendant was gross in comparison, and the rule established by the Supreme Court of Nebraska by its construction and application of this statute is that—

"If plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight, and the negligence of the defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant fails in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery." Morrison v. Union Pac. Co., 177 N. W. 158; Sodomka v. Cudahy Packing Co., 101 Neb. 446, 163 N. W. 809.

Conceding that the defendant did not ring the bell or sound the whistle of his switch engine as it came along over the switch track, a fact left in doubt by the evidence, a stranger or licensee, such as Mr. Marshall was, could not walk from the public road, with his face towards the engine and cars on the switch track in plain sight 400 to 500 feet distant, across the switch track to the cement platform, then turn after a warning to look out for the engine, and go towards it 15 or 20 feet, without taking the care or exercising the diligence in the use of his eyes or ears to protect himself from the approaching train, without being guilty of much more than slight negligence in comparison with the failure of the defendant to ring the bell or sound the whistle of a switch engine moving on the switch track, and there is no escape from the conclusion that under the Nebraska statute and its interpretation by the Supreme Court of that state the contributory negligence of Mr. Marshall was fatal to this action.

[3] Nor was it less fatal under the established rule in the federal courts. If, at the close of the trial of the questions of the negligence of the defendant and the contributory negligence of the person injured, the evidence so clearly discloses the fact that the latter was guilty of negligence which directly contributed to his injury, that a finding to the contrary could not be sustained by the trial court, it is its duty to instruct the jury to return a verdict for the defendant. Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Texas Pacific Ry., 179 U. S. 658, 660, 21 Sup. Ct. 275, 45 L. Ed. 361; Chicago Great Western Ry. v. Roddy, 131 Fed. 712, 713, 65 C. C. A. 470, 471; Western Union Telegraph Co. v. Baker, 140 Fed. 315, 319, 72 C. C. A. 87, 91.

[4] Nor is the question, in case of alleged contributory negligence, whether the negligence of the plaintiff or that of the defendant was the more proximate cause of the injury; but it is whether or not the negligence of the injured person directly contributed to cause it. Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 63 C. C. A. 27; Pyle v. Clark, 79 Fed. 744, 746, 25 C. C. A. 190, 192; Motey v. Pickle

Marble & Granite Co., 74 Fed. 156, 159, 20 C. C. A. 366, 369; Missouri Pac. Ry. v. Moseley, 57 Fed. 921, 923, 925, 6 C. C. A. 641, 643, 644; Western Union Teleg. Co. v. Baker, 140 Fed. 315, 318, 72 C. C. A. 87, 90; Schofield v. C., M. & St. P. Ry. Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railroad v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542. So it is that the question of the negligence of the defendant becomes immaterial, and may be disregarded, if the evidence of Mr. Marshall's contributory negligence was of such a conclusive character that the exercise by the trial court of a sound judicial discretion would have compelled it to refuse to give effect to a contrary verdict, if it had been rendered, and a careful reading and review of the evidence has convinced that it was of this character. It demonstrates Mr. Marshall's familiarity with the mill, the Produce Company's building, its cement platform, the switch track by its side, its customary use, his passage within a few feet of the engine and three cars standing upon it at the mill, as Mr. Johnson brought him to the place opposite the middle of the Produce Company's building and about 30 feet from the platform, his walk from that point south to the platform, Johnson's warning to him to look out for the engine as he stood by his side at the platform just before Johnson jumped upon it when the engine was already coming towards them at a distance of 450 feet, Mr. Marshall's movement towards the engine 15 or 20 feet thereafter, Johnson's second warning when the engine was 170 feet from Mr. Marshall, and the undoubted fact that this engine and the cars were in plain sight of Mr. Marshall, from the place where Mr. Marshall was from the time he left the automobile until he was injured. If he had looked, he must have seen them, and must have known of their approach. The track itself was a signal warning of his danger. He knew that it was only a question of time when, as he stood upon or too near that track, an engine would come over it and might injure him; it was his duty, before he stepped upon the switch track, and as long as he remained so near it that an engine or cars passing upon it could strike him, to make a vigilant use of his eyes and ears to perceive its coming, and of his feet to escape it. The only rational deduction that can be drawn from the evidence is that he failed to discharge his duty diligently to use his senses to perceive and escape the approaching engine, and that this failure directly contributed to his injury.

[5] But counsel for the plaintiff argue that, notwithstanding the contributory negligence of Mr. Marshall, the plaintiff was entitled to recover under the exception to the defense of contributory negligence known as the last clear chance doctrine, which they define to be that, if the defendant or his engineer saw or could by the exercise of ordinary care have seen Mr. Marshall and his danger in time to stop the engine before it struck him, the defendant is liable for the ensuing injury. The plaintiff's definition of the last clear chance doctrine is too broad and erroneous. The exception it presents is limited to cases in which the defendant actually discovers the person injured and his peril in time to avoid the injury. It does not include cases where, by the exercise of ordinary care, the plaintiff might

have made such a discovery in time to avoid the injury. Atchison, T. & S. F. Ry. v. Taylor, 196 Fed. 878, 880, 116 C. C. A. 440, 443; Iowa Cent. Railway Co. v. Walker, 203 Fed. 685, 686, 121 C. C. A. 579, 580; Denver City Tramway Co. v. Cobb, 164 Fed. 41, 43, 90 C. C. A. 459, 460; Kansas City, C. & S. Co. v. Shoemaker, 249 Fed. 458, 459, 151 C. C. A. 416; Id., 245 Fed. 117, 157 C. C. A. 413, 414. There is no evidence in the record in this case that the defendant, his engineer, or any of his employés discovered Mr. Marshall or his peril before he was injured.

The result is that there was no error in the court's direction to the jury to find a verdict for the defendant, and the judgment below must be affirmed. It is so ordered.