## ATCHISON, T. & S. F. RY. CO. v. MERCHANTS' LIVE STOCK CO.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1923.)

No. 6191.

1. **Carriers ☞217(2)—Negligence ☞82—Contributory negligence precludes any recovery for negligence, though latter was more proximate cause.**

One whose negligence directly contributes to his injury cannot recover damages from another whose negligence substantially contributes to cause it, even though the carelessness of the latter was the more proximate or the more effective cause of it, and an instruction in action against carrier of live stock, which permits an apportionment of damages in such case, is erroneous.

2. **Appeal and error ☞1195(3)—Extent to which decision is law of case.**

The decisions of those questions which were actually presented to, considered, and determined by the appellate court on the review of a former trial, and those questions only, become a part of the law of the case and res judicata, and the burden rests on the claimant, who asserts an estoppel based on the former decision, to prove that the question of law at issue on the review of the subsequent trial was so presented, considered, and determined on the former review.

3. **Appeal and error ☞1195(3)—Questions determined as law of the case.**

The decision of an appellate court, reversing the judgment below, cannot be held to have determined as the law of the case a question of law not presented by the pleadings in the trial court, and not expressly considered and determined.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action at law by the Merchants' Live Stock Company against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Gardiner Lathrop and James L. Coleman, both of Chicago, Ill. (W. C. Reid and J. M. Hervey, both of Roswell, N. M., and E. C. Iden, of Albuquerque, N. M., on the brief), for plaintiff in error.

W. A. Dunn, of Roswell, N. M. (L. O. Fullen, of Roswell, N. M., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and BOOTH and FARIS, District Judges.

SANBORN, Circuit Judge. The Merchants' Live Stock Company, a corporation, called herein the plaintiff, brought an action and recovered a judgment against the Atchison, Topeka & Santa Fé Railway Company, a corporation, herein called the defendant, for damages for its alleged negligence in the transportation from Avalon, N. M., to Kansas City, Mo., and in the feeding, watering, loading, and unloading of 1,088 grown cattle and 597 calves. Upon a writ of error this court reversed that judgment chiefly because the trial court, after declaring the law, as contended for by the plaintiff, to be "that it was the duty of the caretakers to assist in unloading, feeding, watering, resting, and reloading the cattle, and that if the caretakers, by using

their reasonable diligence and the means at their command, could have prevented or diminished the damage done, then any such damage which might have been so prevented, or the amount in which such damage might have been diminished, the defendant was not responsible for," added, over the objection and exception of the defendant, this charge:

"And it is for you to say, from all the evidence in this case bearing upon that point, whether or not, under all the circumstances as they existed at the time, the use of reasonable diligence on the part of the caretakers and the means at their command required them to assist in the unloading, feeding, watering, resting, and reloading of the cattle at Strong City."

This court held that there was error also in the admission of certain evidence not material now, and declared that other assigned errors had been considered and were deemed to be without merit. Atchison, Topeka & Santa Fé Railway Co. v. Merchants' Live Stock Co., 273 Fed. 130.

The case was remanded to the court below for a new trial, whereupon the defendant, without objection on the part of the plaintiff, filed an amended answer, wherein, after denying negligence on its part, it for the first time pleaded by way of new matter that, if the cattle were damaged en route, other than by the elements and the cold and chilly weather, such damage was caused by the negligence of the plaintiff, acting by and through its caretakers, by their failing to assist in unloading and reloading such cattle, and by their failing to assist in feeding and watering the cattle at Amarillo, Tex., and at Strong City, Kan., and by their further negligence in failing to keep the cattle on their feet on their way from Amarillo to Strong City. To this answer the plaintiff filed a reply, in which it denied all the averments therein, and upon these pleadings the case went to its second trial.

The plaintiff claimed negligence of the defendant at Amarillo, the first unloading place, in that the two trains carrying them, consisting of 41 cars, were unduly delayed there, and the cattle were not provided with sufficient feed and water; in that the trains were unduly delayed about an hour and a half, roughly handled, and jerked on the way from Wellington to Strong City; in that the cattle were unloaded at Strong City into muddy and unfit pens, were not provided with sufficient space for rest there, or with sufficient food or water, and were negligently unloaded and reloaded at that place.

The defendant claimed that the delay of the trains at Amarillo was unavoidable, because the transportation was in October, 1917, during the war, when it was compelled to give precedence in the use of its transportation facilities to the demands of the United States; that a compliance with those demands, and the fact that its cattle pens at Amarillo were occupied by prior shipments at the time this shipment arrived there, made it impossible for it to avoid the delay at that station, and that it provided there sufficient feed, water, and space for the cattle; that the trains were not roughly handled or jerked beween Wellington and Strong City, and that the delay between those stations was unavoidable, because of an unanticipated strong, cold wind which prevented speedier transportation; that it furnished adequate facilities for feeding, watering, and resting the cattle at Strong

City; that the pens used by the cattle were not muddy; that it was active, diligent, and careful in loading and unloading the cattle at that place, and that the damage to the cattle there, where about 50 of them were left, because they had died or had become too weak to be reloaded, was caused by their emaciated and weak condition when shipped, and by the refusal and failure of the plaintiff, through its caretakers, to assist in unloading, feeding, or watering the cattle, or in reloading them, until the damage had been inflicted upon them; that the trains arrived at Strong City at 1 o'clock a. m., in a cold, piercing wind and sleet storm; that the manager of the plaintiff and three other caretakers, in whose charge the shipment was, and who had received free transportation to go with and care for the cattle, failed and refused to assist, and notified the defendant they would not, and they did not, assist, in unloading the cattle for many hours after the arrival of the trains, and did not assist in feeding or watering the cattle at all, while the defendant's conductor and two brakemen labored alone from 1 o'clock in the morning until daylight to get the cattle unloaded, and that the damage to the cattle at Strong City chiefly resulted from the failure of the plaintiff and these caretakers to assist properly in loading. and unloading and their failure to assist in feeding or watering them.

The main question in this case is the extent and legal effect of the negligence of the manager of the plaintiff, who accompanied and had charge of this stock during its transportation, and three other caretakers, who accompanied the cattle. These facts were conclusively established by the admissions of the manager and the caretakers and by proof. The cattle were emaciated and weak, and were shipped largely because there was such a drought in the Southwest that it was thought necessary to sacrifice the weak to avoid their starvation and to save the stronger cattle. The severe, chilling wind which prevailed the afternoon and night they arrived at Strong City was one of the contributing causes of the loss there of some 50 cattle. The chief injury to the cattle was inflicted at that place. When the trains arrived there at about 1 o'clock in the morning, the manager of the plaintiff and its other caretakers gave notice to the defendant that they would not, and they did not for many hours, assist in unloading the cattle, nor would they at any time assist in feeding, watering, or caring for them at Strong. City, and the evidence was ample to sustain a finding by the jury that this negligence directly and substantially contributed to cause the damage to the cattle at that place. There is no evidence in the record to the amount of damage caused by the negligence of the defendant or of the plaintiff at Amarillo, or on the way from Amarillo to Strong City, or at Strong City. The general manager of the plaintiff testified that he was unable to estimate the damage, if any, to the cattle by reason of the treatment at Amarillo, by reason of the jerking of the train between Wellington and Strong City, or by reason of the yard conditions at Strong City.

[1] The defendant assigns as error the charge of the court below that, as a matter of law, it was the duty of the caretakers of the plaintiff accompanying this shipment to assist in the unloading, feeding, watering, resting, and reloading of the cattle at the points where they

were stopped for such purpose, Amarillo, Tex., and Strong City, Kan., and that if they should find that at either of those places the cattle were damaged by the negligence of the defendant and that any of the damage so caused might have been prevented or reduced by the exercising of ordinary care by the caretakers in charge of the shipment, then any such damage which might have been so prevented, or the amount of which might have been reduced, the defendant is not legally responsible for, and the jury should not consider the same in arriving at their verdict. In this connection it was assigned as error that the court refused to charge, as requested by the defendant, that if they found that the cattle were damaged by the negligence of the defendant at those places, and if they also found that the negligence of the caretakers caused, or contributed to cause, such damage, then all damage or injury to the cattle which they found occurred while they were being unloaded, fed, watered, rested, and reloaded at Amarillo, Tex., and Strong City, Kan., was such that the railroad company was not legally responsible therefor and that they should not consider it in arriving at their verdict. These instructions to the jury in effect directed them in their consideration and finding of the amount of the defendant's liability not to apply the rule that the contributory negligence of the plaintiff, which substantially increases the damage caused by the negligence of the defendant, estops the plaintiff from recovering on account of the defendant's negligence, because it is impossible to determine the amount of damage respectively caused by the negligence of each, and directed them to apportion the damage between the parties.

It is, however, the general rule of law that one whose negligence directly contributes to his injury cannot recover damages of another whose negligence substantially contributes to cause it, even though the carelessness of the latter was the more proximate or the more effective cause of it, and the ruling of the court, of which complaint is here made, was in clear violation of this established rule. Pyle v. Clark, 79 Fed. 744, 746, 25 C. C. A. 190; Chicago, St. Paul, Minneapolis & Omaha R. R. Co. v. Rossow, 117 Fed. 491, 493, 54 C. C. A. 313; Western Union Telegraph Co. v. Baker, 140 Fed. 315, 318, 319, 72 C. C. A. 87; Fluckiger v. Chicago & Northwestern Ry. Co., 99 Neb. 6, 154 N. W. 865; Penn, Jr., v. Erie R. R. Co., 49 N. Y. 204, 10 Am. Rep. 355; Chaimson v. American Express Co., 178 Wis. 286, 189 N. W. 529, 530, 531; Spence v. E. P. & S. W. Co. (N. M.) 207 Pac. 580; St. L., B. & M. Ry. Co. et al. v. Moss (Tex. Civ. App.) 203 S. W. 777, 778.

[2] Counsel for the plaintiff do not deny the existence of this rule of law or its general application, but they strive to escape from the effect of its violation upon the ground that the defendant was estopped from invoking its application at the second trial of this case by the law of the case embodied in the holding of this court on the review of the first trial and set forth in the first paragraph of this opinion. It is true that at the first trial counsel for the plaintiff requested the court to charge the jury as it did charge them on this subject at the second trial, and that one of the reasons for the reversal of the judgment on the first trial was that the court added to that request the instruction

which this court held erroneous, and that this court said in its opinion that the charge requested was right, and that it found no error in the specifications of error not discussed. It is conceded that if, upon a substantially similar state of facts, the same question of law that was presented, considered, and determined by the appellate court at a review of a former trial is presented at a subsequent trial, its decision of this question at the first trial ordinarily becomes a part of the law of the case, res adjudicata, and warrants the trial court in following it upon the subsequent trial.

But where the review of the former trial results in a reversal of the judgment below, and one claims that a question of law is rés adjudicata by the law of the case, the decisions of those questions which were actually presented to, considered, and determined by the appellate court on the review of the former trial, and of those questions only, become a part of the law of the case, and res adjudicata, and the burden rests on the claimant who asserts the estoppel to prove that the question of law at issue on the review of the subsequent trial was so presented, considered, and determined at the former trial. Mutual Life Insurance Co. v. Hill, 193 U. S. 551, 553, 554, 24 Sup. Ct. 538, 48 L. Ed. 788; Chase v. U. S. (C. C. A.) 261 Fed. 833, 834, 839; Iowa Central Ry. Co. v. Walker, 255 Fed. 648, 649, 650, 167 C. C. A. 24.

[3] The answer of the defendant during the first trial of this case contained no plea or averment that the negligence of the plaintiff substantially contributed to cause the damage which the plaintiff in its complaint charged to the negligence of the defendant. But before the second trial the defendant filed, without objection by the plaintiff, an amended answer, in which it alleged for the first time by way of new matter that the negligence of the plaintiff and its caretakers in charge of the cattle directly contributed to cause the damage which the plaintiff charged was caused by the negligence of the defendant. Counsel for the plaintiff argues that this question of the effect of the contributory negligence of the plaintiff was considered and determined by this court at the former trial, because, as they assert, it was presented by the defendant's requests for instructions to the jury and by its brief. But, if it was determined by this court, that determination is evidenced only by these words in the opinion:

"Other assigned errors have been considered, but they are deemed to be without merit."

If the question of the effect of the plaintiff's contributory negligence was presented in the assignments of error and the brief, this court may have concluded that that question was without merit, because the contributory negligence of the plaintiff had not been pleaded. In its opinion this court did not discuss or refer to this question. It is an important—nay, a controlling—question in this case. The legal effect of such negligence is settled, and if that effect in this case had been considered and determined by the court, it is improbable that it would have omitted all discussion of or reference to it. The plaintiff has failed to convince by the evidence in the record, by the briefs and arguments in the review of the first and second trials, and by the opinion of the court on the review of the first trial, that this court

ever considered or determined in its review of the first trial the question whether or not the contributory negligence of the plaintiff and its caretakers was fatal to its claim to recover damages on account of the treatment of the cattle by the defendant at Amarillo and Strong City, and our conclusion is that no such adjudication was ever made or became a part of the law of this case, and that the court below was in error in refusing to instruct the jury upon this subject as requested.

Moreover, an exhaustive examination of the evidence upon this subject has satisfied that the evidence of the contributory negligence of the plaintiff and its caretakers in the treatment of the cattle at Amarillo and Strong City was so conclusive in the second trial that a finding of the jury that they were not guilty of such direct causal contributory negligence as would bar the plaintiff from the recovery of any damages on account of any negligence on its part in the treatment of the cattle at Amarillo or Strong City could not be sustained by the court, and that, if the evidence at the coming trial should be of substantially the same character, the jury should be instructed that they cannot allow any damages against the defendant on that account. These conclusions necessitate another trial of this action, and, as the evidence upon that trial will probably differ from that now in hand to some extent, a discussion of other questions presented by the specifications of error is omitted.

Let the judgment below be reversed, and let the case be remanded to the court below, with direction to grant another trial.